# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Benjamin J. Hill,

        Petitioner,

Civ. No. 14-3337 (DSD/BRT)

v.

State of Minnesota,

**REPORT AND RECOMMENDATION**

        Respondent.

---

Benjamin J. Hill, OID #240626, 7525 4th Ave., Lino Lakes, MN 55014, *pro se* Petitioner.

Matthew Frank, Esq., and James B. Early, Esq., Minnesota Attorney General's Office; and Peter R. Marker, Esq., Ramsey County Attorney's Office, counsel for Respondent.

---

BECKY R. THORSON, United States Magistrate Judge.

    Benjamin J. Hill, a Minnesota inmate serving a sixty-month sentence on two counts of unlawfully possessing a firearm, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court convictions on four grounds. (Doc. No. 1, Pet.) In his first two claims for relief, Hill contends that the firearms underlying his convictions should have been suppressed under the Fourth Amendment because the search warrant for his residence was not supported by probable cause, and the searches of his residence and pizzeria exceeded the scope of the warrants for those premises.[1] (*Id.* at 5–9.) In his other two claims for relief, Hill maintains that he should

---

[1] Throughout his petition, Hill refers to the residence at issue as his parents' home. (*See* Pet. 2, 5–6, 9.) The record shows, however, that he lived with his parents at the time
(Footnote Continued on Next Page)

have received separate trials on the two firearm counts and that the State failed to prove beyond a reasonable doubt that he actually or constructively possessed either firearm. (*Id.* at 10–18.)

The State responds that Hill's Fourth Amendment claims are barred by *Stone v. Powell*, 428 U.S. 465 (1976), that his separate-trials claim is procedurally defaulted, and that his challenge to the sufficiency of the evidence is either not cognizable on federal habeas review, procedurally defaulted, or without merit. (Doc. No. 5, Resp.) For the reasons detailed below, this Court agrees that Hill's Fourth Amendment claims are *Stone*-barred, that his separate-trials claim is procedurally defaulted, and that his sufficiency challenge does not warrant federal habeas relief. Accordingly, this Court recommends that Hill's § 2254 petition be denied.

## I. BACKGROUND

On the morning of June 9, 2010, police were called to a residence in Vadnais Heights, Minnesota, on a report of a possible burglary. *State v. Hill*, No. A13-1182, 2014 WL 2013406, at *1 (Minn. Ct. App. May 19, 2014). Hill and Octavius Johnson, who were at the scene with a U-Haul truck, told the police that they were helping the homeowner ("V.M.") move because the house was in foreclosure. *Id.* Unable to reach

---

(Footnote Continued from Previous Page)
of the relevant search. *See State v. Hill*, No. A13-1182, 2014 WL 2013406, at *3 (Minn. Ct. App. May 19, 2014) ("Although Hill refers to 1028 East Rose Avenue as his 'parents' home,' the search-warrant application states that Hill's driver's license listed the Rose-Avenue address as his address and that Hill provided that address as his home address when he was booked after his arrest. So although Hill's parents may live at 1028 East Rose Avenue, the issuing judge appropriately considered that location to be Hill's residence when determining probable cause. We do as well.").

V.M. to verify that information, the police left. *Id.* Later that afternoon, V.M. contacted the police and reported that a large number of his belongings, including furniture, had been stolen from his residence. *Id.* V.M.'s girlfriend told the police that she saw some of the stolen furniture being unloaded from a U-Haul parked outside of a business located at the intersection of Earl Street and Maryland Avenue in nearby Saint Paul, Minnesota. *Id.* Officers subsequently found Hill and Johnson at 1058 East Maryland Avenue, the location of Hill's pizzeria, with some of the stolen property, and also discovered a U-Haul truck rented by Hill a few blocks away. *See id.* V.M. came to the scene and identified items in the truck and outside the pizzeria as his property, but reported that several of his belongings were still missing, including a bedroom set, coffee and end tables, a king-size box spring, surround sound systems, several mirrors, a cherry wood clock, and a fax machine and printer. *Id.*

The officers arrested Hill and, during the booking process, he identified 1028 East Rose Avenue as his home address, a statement corroborated by the address listed on his driver's license. *Hill*, 2014 WL 2013406, at *1. The police secured separate search warrants for Hill's known residence and pizzeria, both of which authorized law enforcement to search for V.M.'s missing belongings as well as "[a]ny invoices, receipts, pawn slips, notes, and other documents that pertain to the purchase, acquisition, and/or transfer of" that property. *Id.* While executing the warrant for Hill's known residence, which officers soon discovered was his parents' home, the police found a .357 Magnum revolver inside a file cabinet in the basement. *Id.* at *2. And while executing the search warrant for Hill's pizzeria, officers found a Ruger P90 semiautomatic pistol wrapped in

3

gloves inside an uncovered ventilation duct in the basement. *Id.* A substantial amount of DNA was recovered from both firearms; the "predominant DNA profile" on each matched Hill. *Id.* According to the trial testimony of Allison Dolenc, a forensic analyst at the Minnesota Bureau of Criminal Apprehension, the amount of DNA recovered from the firearms would not be expected to come from a "secondary transfer" of DNA from an article of clothing or other item. *Id.*

Hill was charged in Minnesota with two counts of possession of a firearm by an ineligible person. *Hill*, 2014 WL 2013406, at *2. Before trial, he moved to suppress the firearms underlying the charged counts, arguing that the search warrants for his residence and business were not supported by probable cause and, furthermore, that the firearms were found in areas beyond the scope of the warrants. *Id.* The trial court denied the suppression motion after conducting an evidentiary hearing. *Id.* Hill was ultimately convicted by a jury on each firearm count and sentenced to concurrent terms of sixty months imprisonment. *Id.*

With the aid of counsel, Hill appealed his convictions to the Minnesota Court of Appeals, arguing that (1) the search warrant for his and his parents' residence was not supported by probable cause, (2) the police exceeded the scope of the relevant warrants when they searched the file cabinet in his residence and the gloves found in the ventilation duct in his pizzeria, and (3) the State failed to prove beyond a reasonable doubt that he actually or constructively possessed the firearms underlying his convictions. (*See* Doc. No. 6, Ex. 1 at 16–31.) As to his third argument on direct appeal, Hill maintained that the evidence was insufficient to meet Minnesota's heightened-scrutiny

standard for convictions based on circumstantial evidence because the State's DNA evidence did not "exclude the possibility that the [DNA] swabs were contaminated or that [his] DNA got on the firearms from a secondary source." (*Id.* at 27–31.) In a *pro se* supplemental brief to the state appellate court, Hill additionally argued that he should have received "separate trials for the separate guns because they were found at two different times at two different locations during the execution of two separate search warrants." (Doc. No. 6, Ex. 2.)

The Minnesota Court of Appeals rejected each of the arguments raised in Hill's counseled and *pro se* briefs. *Hill*, 2014 WL 2013406, at *2–7. As particularly relevant here, the court of appeals held that the evidence was sufficient to sustain Hill's convictions, even under Minnesota's heightened circumstantial-evidence standard, because "[t]he only reasonable inference from the circumstances proved is that Hill had physically possessed both firearms." *Id.* at *6. The court rejected Hill's theories of innocence as based on mere "conjecture and speculation" and underscored that (1) "the police found a firearm in the basement of [his] parents' house where he kept his belongings and another firearm hidden in [his] place of business," (2) the "predominant DNA profile on each firearm matched [his] DNA," and (3) the jury was free to credit Dolenc's testimony that "she would not expect the amount of [his] DNA that was found on the firearms to come from a 'secondary transfer.'" *Id.* The court also concluded that Hill had waived his separate-trials claim because he had failed to move for severance at the time of trial and had not established good cause for his failure to do so. *Id.* at *7.

Hill then filed a petition for review with the Minnesota Supreme Court, asking the state high court to review his suppression and sufficiency claims only. (Doc. No. 6, Ex. 5.) After the state supreme court denied further review (Doc. No. 6, Ex. 6), Hill filed his present federal habeas petition, reiterating the four grounds for relief that he presented to the Minnesota Court of Appeals on direct appeal.

## II. DISCUSSION

### A.     Grounds One and Two are *Stone*-Barred

In Grounds One and Two of his federal habeas petition, Hill argues that there was no probable cause to search his parents' home for property taken during the burglary of V.M.'s house, and that the police exceeded the scope of the warrants for that residence and his business when they searched the file cabinet in his parents' home and the gloves in the ventilation duct in his pizzeria. (Pet. 5–9.) The State responds that these Fourth Amendment challenges to Hill's convictions are barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). (Resp. 9–10.) This Court agrees.

In *Stone*, the Supreme Court severely curtailed the ability of state prisoners to raise Fourth Amendment claims in § 2254 proceedings, holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. Accordingly, "a Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from

using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc). Hill was not only afforded a full and fair opportunity to challenge the constitutionality of the searches that uncovered the firearms underlying his convictions, but he actually availed himself of that opportunity both at trial and on direct appeal. *Stone* therefore precludes him from relitigating the validity of those searches in a federal habeas proceeding.

**B.      Ground Three is Procedurally Defaulted**

In Ground Three of his § 2254 petition, Hill contends that he should have received "separate trials for the separate guns because they were found at two different locations during the execution of two separate search warrants." (Pet. 11.) The State responds that Hill's claim is procedurally defaulted. (Resp. 11.)

A state prisoner can procedurally default a claim for federal habeas relief in one of two possible ways. First, a claim is procedurally defaulted where a state prisoner fails to properly exhaust available state court remedies by fairly presenting his claim in each appropriate state court, including a state high court with powers of discretionary review, and state procedural rules preclude any further attempts at exhaustion. *Welch v. Lund*, 616 F.3d 756, 758–60 (8th Cir. 2010); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary

7

review) . . . .") (quotations and citations omitted). Second, a claim is likewise defaulted where it is rejected by the state courts based on an "independent and adequate" state procedural rule, meaning one that is "firmly established and regularly followed." *Niederstadt v. Nixon*, 505 F.3d 832, 835 (8th Cir. 2007) (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991), and *Ford v. Georgia*, 498 U.S. 411, 424 (1991)). Federal habeas courts are barred from reviewing the merits of procedurally defaulted claims unless the petitioner can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To fall within the latter exception, a petitioner must make a colorable showing of actual innocence, not merely legal innocence, through the presentation of new and reliable evidence. *See Schlup v. Delo*, 513 U.S. 298, 321–24 (1995); *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994).

Hill's separate-trials claim is procedurally defaulted under either test. While Hill raised his claim in his *pro se* supplemental brief to the Minnesota Court of Appeals, he did not raise it in his petition for review with the Minnesota Supreme Court. (*See* Doc. No. 6, Ex. 5.) He has therefore failed to properly exhaust his separate-trials claim in state court, and any further attempts at full and proper exhaustion would now be futile as Minnesota law precludes state prisoners from seeking post-conviction relief based on a claim that was raised on direct appeal.[2] *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn.

---

[2] Although there are two recognized exceptions to Minnesota's *Knaffla* bar, those exceptions apply only to claims that could have been raised on direct appeal, not those

(Footnote Continued on Next Page)

8

1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."). Hill's failure to present his separate-trials claim to the Minnesota Supreme Court means that it is procedurally defaulted. *See Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) ("[A]s a consequence of [the petitioner's] failure to seek further review in the state supreme court, the claims are procedurally defaulted.").

Even disregarding the lack of proper exhaustion, Hill's claim would still be procedurally defaulted because the Minnesota Court of Appeals concluded that he had "waived" that claim by failing to move for severance at the time of trial and failing to establish good cause for that omission. *See Hill*, 2014 WL 2013406, at *7; *see also Crawford v. Minnesota*, 498 F.3d 851, 854 (8th Cir. 2007) ("[F]ederal habeas relief may not be granted on a federal claim that the state appellate court declined to address because the petitioner failed to meet a state procedural requirement constituting an independent and adequate state ground.") (quotation omitted). Hill does not contend that the waiver rule applied by the Minnesota Court of Appeals is not firmly established and regularly followed by state courts, and this Court is satisfied that it is. *See, e.g.*, *State v. Hudson*, 281 N.W.2d 870, 872–73 (Minn. 1979) ("[F]ailure to move for severance constitutes a

---

(Footnote Continued from Previous Page)
that had been raised on appeal. *See Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007) (explaining that the *Knaffla* rule is subject to two exceptions — (1) "if a claim is known to a defendant at the time of direct appeal but is not raised, it will not be barred by the rule if the claim's novelty was so great that its legal basis was not reasonably available when direct appeal was taken," and (2) "even if the claim's legal basis was sufficiently available, substantive review may be allowed when fairness so requires and the petitioner did not 'deliberately and inexcusably' fail to raise the issue on direct appeal") (quotations omitted).

9

waiver unless defendant can show good cause for relief from the waiver."); *State v. Culpepper*, No. A12-1447, 2013 WL 3968608, at *2 (Minn. Ct. App. Aug. 5, 2013) ("Defendants who do not move to sever charges in district court generally waive the right to challenge the joinder of charges on appeal."); *State v. Burks*, Nos. A10-972, A10-973, 2012 WL 1149322, at *10 (Minn. Ct. App. Apr. 9, 2012) (same); *State v. Turner*, No. C5-01-2230, 2002 WL 31301454, at *1 (Minn. Ct. App. Oct. 15, 2002) (same). His claim is therefore procedurally barred for that reason as well.

Hill does not specifically argue that he meets either the cause-and-prejudice or fundamental-miscarriage-of-justice exceptions to the procedural default doctrine. He does, however, intimate that his trial counsel was ineffective for failing to inform him that he could move to sever the two firearm counts with which he was charged. (*See* Pet. 2.) But any such claim could not serve to excuse his procedural default for two reasons. First, while trial counsel's alleged omission might conceivably constitute cause for Hill's failure to move for severance at trial, it cannot excuse the failure to raise his separate-trials claim before the Minnesota Supreme Court. Second, a claim of ineffective assistance of counsel can only serve as cause for a procedural default if it was itself fully exhausted in state court, which Hill has not done. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."). Finally, Hill has not presented new and reliable evidence showing that he is factually innocent of the crimes for which he was convicted. *See Schlup*, 513 U.S. at 321–24; *see also Pitts v. Norris*, 85 F.3d 348, 350–51

(8th Cir. 1996) (holding that a claim of insufficient evidence "is one of legal innocence" and, as such, cannot satisfy the fundamental-miscarriage-of-justice exception to the procedural default rule). Because Hill has procedurally defaulted his separate-trials claim, and he has not demonstrated adequate cause to excuse that default or made a colorable showing of actual innocence, this Court cannot consider its merits.

C. **Ground Four Does Not Merit Federal Habeas Relief**

In his fourth and final claim for relief, Hill contends that the State failed to prove beyond a reasonable doubt that he actually or constructively possessed either of the two firearms underlying his state court convictions. (Pet. 13–18.) As he did before the state courts on direct appeal, Hill specifically argues that the evidence of possession, including the DNA found on the firearms, did not satisfy Minnesota's heightened-scrutiny standard for convictions based on circumstantial evidence because it did not exclude the possibility that the DNA came from a secondary source or was contaminated. (*Id.* at 14–18.) Hill asserts that his convictions must be reversed because the State's evidence was not inconsistent with every reasonable hypothesis of innocence. (*Id.* at 14.)

Because Hill's sufficiency challenge, as presented to the state courts and reiterated in these proceedings, is based entirely on Minnesota's heightened circumstantial-evidence standard, the State suggests that it is not cognizable on federal habeas review and, to the extent that it attempts to raise a federal issue, has been procedurally defaulted. (*See* Resp. 5, 12–13.) The State's point is well taken. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (emphasizing that "federal habeas corpus relief does not lie for errors of state law" and that federal courts are "limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States") (quotation omitted); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (citation omitted). It is, however, at odds with the Eighth Circuit's holding in *Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir. 1992), that "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction," which this Court is bound to follow. *See Smith v. Hobbs*, No. 5:11-CV-00091, 2012 WL 3595993, at *6 (E.D. Ark. May 24, 2012) (concluding, based on *Satter*, that a petitioner's sufficiency challenge was not procedurally barred even though his "appellate brief failed to contain any references to federal law"); *Pendleton v. Fabian*, No. 09-733, 2010 WL 145274, at *6 (D. Minn. Jan. 8, 2010) (explaining that because a sufficiency challenge is "necessarily a constitutional issue" under *Satter*, it is "exhausted even absent a specific reference to a federal constitutional guarantee").

Hill's claim nevertheless fails under the highly deferential standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prohibits federal courts from granting habeas relief on a claim adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) (explaining that AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt") (quotations and citations omitted). AEDPA "erects a formidable barrier to federal habeas relief" by requiring state prisoners to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 786–87 (2011)). So long as "fairminded jurists could disagree on the correctness of the state court's decision," AEDPA precludes relief. *Richter*, 131 S. Ct. at 786 (quotation omitted).

Hill does not argue, nor has he established, that the Minnesota Court of Appeals' conclusion that the evidence was sufficient to sustain his convictions was contrary to, or involved an unreasonable application of, clearly established *federal* law.[3] The gravamen of Hill's claim is that the evidence did not satisfy Minnesota's heighted-scrutiny standard for convictions based on circumstantial evidence, under which "[t]he circumstances proved must be consistent with a hypothesis that the defendant is guilty and must be

---

[3] Although the Minnesota Court of Appeals did not cite any relevant federal precedent in disposing of Hill's sufficiency claim, that fact does not render its decision inconsistent with clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," state courts need not cite or even be aware of the relevant federal precedents for AEDPA to apply).

13

inconsistent with any other rational hypothesis." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012); *see also State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) ("A conviction based on circumstantial evidence . . . warrants heightened scrutiny . . . . [T]he circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any other rational hypothesis except that of guilt.") (quotation omitted). In § 2254 proceedings, however, federal courts "do not evaluate whether the evidence was sufficient under state law, because errors of state law are not cognizable in federal habeas courts." *Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004); *see also Estelle*, 502 U.S. at 67–68 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quotation and citations omitted). And Minnesota's heightened circumstantial-evidence standard markedly differs from the established federal due process standard, which merely requires that the evidence—direct or circumstantial—"could reasonably support a finding of guilt beyond a reasonable doubt," not that it "rule out every hypothesis except that of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 326 (1979); *see also Parker v. Matthews*, — U.S. —, 132 S. Ct. 2148, 2152 (2012) ("The evidence is sufficient to support a conviction whenever, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (quotation omitted); *United States v. Jenkins*, 758 F.3d 1046, 1050 (8th Cir. 2014) ("The facts and circumstances

relied on by the government must be consistent with guilt, but they need not be inconsistent with any other hypothesis.") (brackets and quotation omitted).

The only question properly before this Court on federal habeas review is whether the Minnesota Court of Appeals' decision involved an objectively unreasonable application of clearly established federal law, which unlike state law requires only that the evidence rationally support a finding of guilt beyond a reasonable doubt. *See Parker*, 132 S. Ct. at 2152 ("[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable.") (quotation omitted). The answer to that question is no, as fairminded jurists could certainly conclude that the evidence, when viewed in the light most favorable to the jury's verdict, was sufficient to allow a rational juror to find beyond a reasonable doubt that Hill had possessed the firearms found in his parents' home and his pizzeria. *See State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015) ("Possession of a firearm may be proved through actual or constructive possession . . . . [T]o establish constructive possession, the State must show either (1) that the prohibited item was found in a place under defendant's exclusive control to which other people did not normally have access, or (2) if the prohibited item was found in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.") (quotations omitted). As the Minnesota Court of Appeals noted, the evidence showed that the police found one of the firearms "in the basement of Hill's parents' home where he kept his belongings," they found the other firearm "hidden in Hill's place of business," the "predominant DNA

profile on each firearm matched Hill's DNA," and the State's forensics expert testified that "she would not expect the amount of Hill's DNA that was found on the firearms to come from a 'secondary transfer.'" *Hill*, 2014 WL 2013406, at \*6. Even if, as Hill argues, the evidence did not wholly exclude the possibility that the DNA recovered from the firearms was contaminated or came from a secondary source, that theoretical possibility does not negate the validity of his convictions under established federal law. *See Jackson*, 443 U.S. at 326 (rejecting any federal due process requirement that the prosecution must "rule out every hypothesis except that of guilt beyond a reasonable doubt"). AEDPA therefore precludes federal habeas relief on Hill's sufficiency claim.

## CONCLUSION

In sum, this Court concludes that Grounds One and Two of Hill's federal habeas petition are barred under *Stone v. Powell*, that Ground Three is procedurally defaulted, and that Ground Four does not warrant relief under AEDPA. This Court therefore recommends that Hill's § 2254 petition be denied.

## CERTIFICATE OF APPEALABILITY

A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1). A COA may only issue if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). For claims rejected on the merits, this standard demands a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, however, a constitutional claim is denied on procedural grounds, a petitioner

must establish that reasonable jurists would find it debatable whether (1) the district court was correct in its procedural ruling and (2) the petition states a valid claim of the denial of a constitutional right. *Id.* For the reasons previously outlined, reasonable jurists would not find it debatable whether Hill's first three claims for relief are *Stone*-barred or procedurally defaulted, or whether he is entitled to relief on his sufficiency claim under the highly deferential standards mandated by AEDPA. This Court therefore recommends that Hill not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Benjamin Hill's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**; and

2. No certificate of appealability be granted in this matter.

Date: July 13, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation by **July 30, 2015**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).